McGREGOR W. SCOTT
United States Attorney
SHELLEY D. WEGER
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:16-CR-190 TLN |
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM AND MOTION AND |
| v. | SUPPORTING MEMORANDUM FOR DOWNWARD DEPARTURE PURSUANT TO |
| JEFFREY HAYES, | U.S.S.G. SECTION 5K1.1 |
| Defendant. | |

The United States of America respectfully submits this memorandum concerning the sentencing

of defendant Jeffrey Hayes. The United States recommends a sentence at the low-end of the applicable

guideline range as determined by the Court, and moves, pursuant to Section 5K1.1 of the U.S.

Sentencing Guidelines, for a 10% downward departure from the applicable low-end guideline sentence

based upon defendant Hayes's substantial assistance to law enforcement authorities. The United States

submits this memorandum in support of such departure. The United States further requests that the

Court order Hayes to pay restitution to the victim "Vicky," and continue the question of restitution for

victim "Maureen" for 60-to-80 days.

## I.     THE PLEA AGREEMENT

Defendant Jeffrey Hayes pleaded guilty to the sole count of the Indictment in this case, which

charged him with Receipt of Child Pornography with a Prior Conviction in violation of 18 U.S.C.

§ 2252(a)(2). *See* ECF 36 (Plea Agreement). In the plea agreement, Hayes agreed to pay restitution as

1   ordered by the Court.  *See id.* at II.B.  He agreed to waive his rights to appeal and to collaterally attack

2   his conviction, sentence, restitution order or forfeiture order, with the exclusion of non-waivable claims.

3   *See id.* at VII.  He also agreed to fully cooperate with the government.  *See id.* at II.H.

4         The parties stipulated to the following guidelines:

5           •   Base offense level is 22 (U.S.S.G. § 2G2.2(a)(2));

6           •   2-level increase because the material involved at least on prepubescent minor (U.S.S.G.

7               § 2G2.2(b)(2));

8           •   5-level increase because defendant distributed in exchange for valuable consideration

9               (U.S.S.G. § 2G2.2(b)(3)(B));

10          •   4-level increase because the offense involved material that depicted sadistic and

11              masochistic conduct or other depictions of violence (U.S.S.G. § 2G2.2(b)(4)(A));

12          •   2-level enhancement applies because the offense involved the use of a computer

13              (U.S.S.G.§  2G2.2(b)(6)); and

14          •   5-level increase because the offense involved more than 600 images (U.S.S.G.

15              § 2G2.2(b)(7)(D)).

16   ECF 36 at §VI.B (Plea Agreement).

17         In the plea agreement, the United States reserved the right to argue in support of the application

18   of:  (1) an additional two level increase pursuant to U.S.S.G. § 3A1.1(b)(1) on the basis that the

19   defendant knew or should have known that a victim of the offense was a vulnerable victim and (2) a five

20   level enhancement for a pattern of activity involving the sexual abuse or exploitation of a minor

21   pursuant to U.S.S.G. § 2G2.2(b)(5).  *See id.* at VI.B.3 & 6.  The defendant reserved the right to argue

22   against the application of these enhancements.

23         The United States, in exchange, agreed to recommend a sentence at the low-end of the advisory

24   guideline range, as determined by the Court.  ECF 36 at §§ III.B.1 & VI.B.6.  The United States also

25   agreed to recommend a three-level reduction for acceptance of responsibility.  The United States further

26   agreed, that if it determined that Hayes fully cooperated with the government and complied with his

27   obligations under the plea agreement the United States may move for and recommend a reduction of his

28   sentence pursuant to Section 5K1.1 of the Sentencing Guidelines.  Pursuant to the plea agreement, "it is

within the sole and exclusive discretion of the government to determine whether the defendant has provided substantial assistance" and that the "the government may recommend . . . no reduction at all; depending upon the level of assistance the government determines the defendant has provided." *See id.* at § III.B.3.

## II.   SUPPORTING MEMORANDUM FOR DOWNWARD DEPARTURE PURSUANT TO U.S.S.G. SECTION 5K1.1

The government recommends that Hayes receive a 10% downward departure under Section 5K1.1 for substantial assistance. Pursuant to Section 5K1.1 of the Sentencing Guidelines, the court may depart from the guidelines "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense[.]" U.S.S.G. § 5K1.1. The Commentary to Section 5K1.1 notes that "[s]ubstantial weight should be given to the government's evaluation of the extent of the defendant's assistance, particularly where the extent and value of the assistance are difficult to ascertain." U.S.S.G. § 5K1.1 n.3.

In this case, Hayes indicated his intent to cooperate early in the case. Hayes and his attorney met with the government and an FBI Task Force Officer. During that meeting, Hayes provided information about how he located and obtained child pornography and how he identified other individuals with whom he could trade child pornography. This type of background information is helpful to law enforcement in that it assists law enforcement in better understanding the patterns and practices of these types of offenders. Although Hayes did not provide any information leading to the identification or prosecution of other offenders, he appeared to provide truthful and accurate information that was consistent with the government's prior, independent investigation. In addition, Hayes permitted his statement to be recorded by law enforcement, and his statement may be used to train other law enforcement officers about child exploitation investigations and offenders.

## III.   SENTENCING RECOMMENDATION

### A.   Guideline Calculation and Recommended Term of Imprisonment

Pursuant to the plea agreement, the United States recommends a sentence at the low end of the applicable guideline range as determined by the Court. The United States contends that the correctly calculated guideline range is 40 years (480 months). For the reasons discussed above, the United States

GOVERNMENT'S SENTENCING MEMORANDUM AND 5K MOTION

1 further recommends a 10% downward departure from the low-end of the applicable guideline range

2 pursuant to U.S.S.G. § 5K1.1.

3    The United States believes that the PSR correctly calculates the applicable guideline range with

4 one exception. *See* ECF 42 (United States' Objection to Presentence Report). The PSR does not apply a

5 two-level enhancement for vulnerable victim pursuant to U.S.S.G. § 3A1.1(b) despite the undisputed

6 fact that the defendant possessed files depicting sadistic/masochistic images as well as files depicting the

7 sexual abuse of infants and toddlers (vulnerable victims). PSR ¶¶ 17, 27; PSR Att. 2 (Response to

8 Objections). The probation officer declined to apply the vulnerable victim enhancement due to the

9 misinterpretation that the application of U.S.S.G. § 2G2.2(b)(4) automatically precludes the application

10 of the vulnerable victim enhancement even where, as here, the defendant possessed both

11 sadistic/masochistic images and images depicting the sexual abuse of an infant or toddler. For the

12 reasons set forth in the United States' Objection to the PSR, the United States contends that both

13 enhancements can, and should, be applied here. ECF 42 at p. 3-4.

14    If the Court agrees with the United States, and applies a two-level enhancement for vulnerable

15 victim, the total offense level would become 44 (i.e., 47 minus 3 levels for acceptance of responsibility).

16 With a total offense level of 44 and a criminal history category II, the guideline sentence is life.

17 U.S.S.G. Ch. 5 Pt. A, Appl. n. 2 ("An offense level of more than 43 is to be treated as an offense level of

18 43."). But because a life sentence exceeds the statutory maximum sentence of 40 years, or 480 months,

19 the statutory maximum, 480 months' imprisonment, becomes the new guideline range. *See* 18 U.S.C.

20 § 2252(b)(1) (40 year statutory maximum); U.S.S.G. § 5G1.1. Assuming the Court applies the two-level

21 enhancement for vulnerable victim, the United States recommends a sentence of 432 months

22 imprisonment (a 10 percent departure from 480 months, the low-end of the applicable guideline range).

23    If, however, the Court adopts the guideline calculation in the PSR, the United States will

24 recommend a sentence of 324 months imprisonment (a 10 percent departure from 360 months, the low-

25 end of the guideline range). *See* PSR at ¶¶ 26-40 and p. 19.

26    **B.    Restitution**

27    The United States also requests that the Court order Hayes to pay restitution to the victim

28 "Vicky," from the Vicky Series of child pornography. "Vicky" requests $10,000 for disaggregated

medical costs. ECF 46 at p. 2.[1] The PSR makes the same recommendation. PSR ¶¶ 21, 84. The defendant has not file any objection to the PSR. Although the amount of restitution is not in dispute, the United States sets forth the relevant legal authorities and a summary of "Vicky's" disaggregated losses below in support of "Vicky's" restitution request.

The United States further requests that the Court set a restitution hearing 60-to-80 days from the date of sentencing to address restitution to victim "Maureen" from the Lighthouse Series. Counsel for "Maureen" informed undersigned counsel on January 5, 2018, that "Maureen" was requesting restitution in this case and that she was in the process of having "Maureen's" losses assessed and documented. Accordingly, the United States requests that the question of restitution for "Maureen" be continued for 60-to-80 days pursuant to 18 U.S.C. § 3664(d)(5).[2]

i.     Restitution is Mandatory for Violations of 18 U.S.C. § 2259

Restitution is statutorily mandated for child pornography offenses. *See* 18 U.S.C. § 2259(a), (b)(4)(A) (titled "Mandatory Restitution"); *see also* 18 U.S.C. § 3663A. Orders of restitution under Section 2259 "shall direct the defendant to pay . . . the full amount of the victim's losses" which "includes any costs incurred by the victim for:"

- Medical services relating to physical, psychiatric, or psychological care;
- Physical and occupational therapy or rehabilitation
- Necessary transportation, temporary housing, and child care expenses;
- Lost income;
- Attorneys' fees, as well as other costs incurred; and
- Any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(b)(1), (3).

---

[1] In this letter, the victim's attorney, Carol Hepburn, requests that "Because of their very sensitive nature we ask that [the materials supporting the restitution request] be filed under seal." ECF 46 at p. 2. The law supports this request. The Crime Victims Right's Act mandates that crime victims have "the right to be treated with fairness and with respect for the victim's dignity and privacy." 18 U.S.C. § 3771. In addition to the general rights set forth in section 3771, minor crime victims are entitled to additional protections: "All papers to be filed in court that disclose the name of or any other information concerning a child shall be filed under seal." 18 U.S.C. § 3509(d)(2) (emphasis added).

[2] Because the Lighthouse Series contains multiple victims, the United States also requires additional time to confirm whether "Maureen" is depicted in the files found in Hayes' possession.

The court "may not decline to issue an order under this section because of . . . the economic circumstances of the defendant; or (ii) the fact that a victim has . . . [or will] receive compensation for his or her injuries from the proceeds of insurance or any other source."  18 U.S.C. § 2259(b)(4)(B).

        ii.     <u>The Defendant is Responsible for Harms Proximately Caused by His Conduct</u>

        a.  *Paroline v. United States*, 134 S. Ct. 1710 (2014)

In *Paroline*, the Supreme Court explained what type of "causal relationship must be established between the defendant's conduct and a victim's losses for purposes of determining the right to, and the amount of, restitution under § 2259."  *Paroline*, 134 S. Ct. at 1716.  The Court explained:

> Where it can be shown both that a defendant possessed a victim's images and that a victim has outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry, a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses.

*Paroline*, 134 S. Ct. at 1727.  In doing so, the Court rejected a claim by the defendant that the victim must show "but-for" causation.  *Paroline*, 134 S. Ct. at 1726-27.  The Court also rejected the government and the victim's argument that the defendant should be jointly and severally liable with all other offenders for all of the losses suffered by the victim.  *Paroline*, 134 S. Ct. at 1725-26.  The Supreme Court specifically mandated that those who possess and distribute images in cases such as this must pay restitution:

> The cause of the victim's general losses is the trade in her images.  And Paroline is a part of that cause, for he is one of those who viewed her images.  While it is not possible to identify a discrete, readily definable incremental loss he caused, it is indisputable that he was a part of the overall phenomenon that caused her general losses.

*Paroline*, 134 S. Ct. at 1726.

The Court then addressed what the amount of restitution should be, explaining:  "At a general level of abstraction, a court must assess as best it can from available evidence the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses.  This cannot be a precise mathematical inquiry and involves the use of discretion and sound judgment."  *Paroline*, 134 S. Ct. at 1727–28.  The Court held that "there are a variety of factors" that a district court might consider in determining the proper amount.  *Paroline*, 134 S. Ct. at 1728.  It is "neither necessary

nor appropriate to prescribe a precise algorithm" for determining the amount of restitution for an individual defendant. *Paroline*, 134 S. Ct. at 1728. The district court "might, as a starting point" find the amount of the losses caused by the continuing trafficking of the images, and then set an award of restitution based on "factors that bear" on the relative causation of a particular defendant. *Paroline*, 134 S. Ct. at 1728. Such factors "could" include:

- The number of past criminal defendants found to have contributed to the victim's general losses;

- Reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses;

- Any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted);

- Whether the defendant reproduced or distributed images of the victim;

- Whether the defendant had any connection to the initial production of the images;

- How many images of the victim the defendant possessed; and

- Other facts relevant to the defendant's relative causal role.

*Paroline*, 134 S. Ct. at 1728. These factors, however, need not be a rigid formula, "especially if doing so would result in trivial restitution orders." *Id.*

### b. *United States v. Galan*, 804 F.3d 1287 (9th Cir. 2015)

After *Paroline*, the Ninth Circuit addressed the question of how to calculate the amount of restitution in a case that involved the distribution and possession of child pornography. *See United States v. Galan*, 804 F.3d 1287 (9th Cir. 2015). The Ninth Circuit held that "the losses, including the ongoing losses, caused by the original abuse of the victim should be disaggregated from the losses caused by the ongoing distribution and possession of images of that original abuse, to the extent possible."[3] 804 F.3d at 1291. The Ninth Circuit noted in dicta that "[n]o doubt that [disaggregation]

---

[3] In *United States v. Massa*, 647 Fed. Appx. 718 (9th Cir. April 1, 2016), the Ninth Circuit noted that under *Paroline*, a district court is not required to distinguish between losses caused by the ongoing trafficking of the victim's images that happened prior to the defendant's offense from the losses that happened after the defendant accessed the images. Rather, the "relaxed causation inquiry" allows district courts to consider as the starting point "all of a victim's losses stemming from traffic in his or her images regardless of whether they were caused by any individual perpetrator at any specific moment

1  will vary from case to case depending on many factors [and] . . . .We leave the appropriate development

2  of the record in that regard to the parties and the district court."[4]  804 F.3d 1291.  It also recognized that

3  the "ultimate decision will be a mix of 'discretion and estimation.'"  *Id.* (citation omitted).

4                               c.  *In re: Amy*, 710 F.3d 985, 986 (9th Cir. 2013)

5          In early 2013, victims "Amy" and "Vicky" requested restitution in a case that involved peer-to-

6  peer file sharing.  *See United States v. Cantrelle*, No. 2:11-CR-00542-GEB, 2013 WL 1624824, at \*1

7  (E.D. Cal. Apr. 15, 2013).  The PSR suggested that no restitution was proper given the facts contained in

8  the restitution requests and the proximate causation requirement of *United States v. Kennedy*, 643 F.3d

9  1251 (9th Cir. 2011).  *Id.*  The government erroneously agreed with the PSR, and did not advocate for an

10  order of restitution for either "Vicky" or "Amy," but simply submitted the matter on the

11  recommendation contained in the PSR.  *Id*. at \*2.  "Amy" and "Vicky" then sought the extraordinary

12  remedy of *mandamus*, which the Ninth Circuit granted.  *In re: Amy*, 710 F.3d 985 (9th Cir. 2013).  In

13  that case, the Ninth Circuit affirmed its proximate causation standard from *Kennedy*, and then, after

14  reviewing the restitution requests of "Vicky" and "Amy," the Ninth Circuit held that "petitioners

15  provided sufficient evidence to establish a causal connection between defendant's offense and

16  petitioners' losses."  *In re Amy*, 710 F.3d at 987.  Thus, the Ninth Circuit held that it was an abuse of

17  discretion to order no restitution to "Vicky" from a defendant who possessed her images in his peer-to-

18  peer file sharing software.  *Id*.  On remand, this Court awarded $2,881.05 in restitution to "Vicky."

19  *Cantrelle*, No. 2:11-CR-00542-GEB, 2013 WL 1624824, at \*9 (E.D. Cal. Apr. 15, 2013).

20                               iii.    Restitution for "Vicky"

21          It is well-settled that this Court is required to order restitution to "Vicky" in a case such as this.

22  Indeed, it would be abuse of discretion not to award any restitution.  *In re Amy*, 710 F.3d at 987.

23  *Paroline* has not changed the landscape since *In re: Amy* or *Kennedy*.  In fact, *Paroline* resolved the

24  _____

25  in time."  *Id.* at \*721 (citing *Paroline*, 134 S. Ct. at 1728).

26  [4]  The Ninth Circuit explained that "[t]here can be no doubt that restitution is mandatory for the 'full amount of [the victim's] losses,' which were incurred 'as a proximate result of [Galan's] offense[s].'"  804 F.3d at 1289.  In *Galan*, it was undisputed that the types of losses claimed — which

27  included future lost earnings, medical expenses, vocational rehabilitation, and the cost of an economic report — were the proper subject of restitution and that a trafficker and possessor such as Galan "must

28  pay some restitution on account of those losses."  *Id.*

1  circuit split on the question of whether to award restitution the same way *Kennedy* did: by adopting a

2  "proximate causation" standard rather than a "but for" causation standard. *Paroline*, 134 S. Ct. at 1726.

3  "Where it can be shown both that a defendant possessed a victim's images and that a victim has

4  outstanding losses caused by the continuing traffic in those images . . . a court applying section 2259

5  should order restitution in an amount that comports with the defendant's relative role in the causal

6  process that underlies the victim's general losses." *Paroline*, 134 S. Ct. at 1727.

7          In determining the appropriate amount of restitution, the Court has two tasks. First, "Vicky's"

8  general losses must be "disaggregated" as required by *Galan*. That is, to the extent that any claimed

9  losses are also attributable to the original abuse, those losses must be removed. Then, the Court must

10  "assess as best it can from available evidence the significance of the individual defendant's conduct in

11  light of the broader causal process that produced the victim's losses." *Paroline*, 134 S. Ct. at 1727–28.

12  This "cannot be a precise mathematical inquiry and involves the use of discretion and sound judgment."

13  *Paroline*, 134 S. Ct. at 1727–28. The resulting award must be neither "severe" nor "a token or nominal

14  amount." *Paroline*, 134 S. Ct. at 1727.

15                          a.   "Vicky's" Disaggregated General Losses

16          Here, "Vicky" provides disaggregated medical costs totaling $3,266,093. ECF 46 at pp. 2, 5.

17  Medical costs are explicitly recoverable under 18 U.S.C. § 2259(b)(3)(A). Vicky's medical injuries and

18  disaggregated medical costs are documented in a report by Dr. Cooper. ECF 47 at pp. 1-101. As

19  indicated in Dr. Cooper's report, Dr. Cooper assessed the disaggregated medical costs based on the

20  ongoing "victim impact of downloading, possession and distribution" of images of "Vicky's" abuse. Dr.

21  Cooper's assessment found that "Vicky's" medical conditions can worsen over time due to the stress

22  related to dealing with the active trafficking of images of her abuse. ECF 47 at pp. 4-5. In her report,

23  Dr. Cooper provides a more detailed explanation of how the trafficking and possession of images

24  depicting Vicky's abuse can worsen Vicky's medical conditions, and the medical costs associated with

25  the various conditions. ECF 47 at pp. 4-5.

26          "Vicky's" total loss amount, not including attorney's fees, is $4,517,390.13. This amount

27  includes the above medical costs as well as $164,475 for future counseling expenses, $53,300 in

28  educational and vocational counseling needs and lost part-time income during schooling, $936,646 in

1  lost past and future earnings, and $96,846.13 in expenses paid in out of pocket costs incurred relative to

2  restitution documentation.  ECF 46 at p. 2.  According to the letter submitted by "Vicky's" attorney on

3  January 10, 2018, $3,228,647.03 of "Vicky's" total loss remains unpaid.  ECF 46 at p. 2.  While all of

4  these losses are supported by detailed reports and, as explained in the reports, are in part due to the

5  ongoing trafficking of her images, she has only provided disaggregation information regarding medical

6  costs.[5]  In the absence of evidence demonstrating loss disaggregation, the Court cannot engage in the

7  disaggregation analysis required by *Galan* or proceed to the *Paroline* analysis as to these additional

8  losses.

9                                    b.  Paroline Considerations

10        Once the disaggregated losses are calculated, it becomes this Court's obligation to "assess as best

11  it can from available evidence the significance of the individual defendant's conduct in light of the

12  broader causal process that produced the victim's losses."  *Paroline*, 134 S. Ct. at 1727–28.  The

13  Supreme Court instructs that "factors that bear" on the relative causation of a particular defendant

14  "could include" some of the following:

15        1.      The number of past criminal defendants found to have contributed to the victim's general
                  losses.
16

17        According to records maintained by the Department of Justice, as of December 2017, the United

18  States is aware of approximately 1005 prior restitution awards to "Vicky" for federal child pornography

19  trafficking offenses.[6]  Of those restitution awards the average (arithmetic mean) of restitution awarded is

20  approximately $14,170.  This includes the following restitution orders awarded in this district: a $10,000

21  restitution order awarded on July 28, 2017 in *United States v. Geanakos*, case no. 13-CR-404 GEB, and

22  a $15,000 restitution order awarded on September 18, 2017 in *United States v. Bailey*, case no. 14-CR-

23

24        [5]  The reports were sent to defense counsel and the probation officer in advance of sentencing.
Because the government concedes that the losses documented in these additional reports are not
25  "disaggregated," the extensive reports and the providers' CV's are not filed as exhibits to this pleading.
They were previously provided to the defense and the probation officer via the PSR process.  Some of
26  these reports have been forwarded to the Court during the PSR process.  ECF 46 &47.  If either the
Court or Hayes want additional reports in the record, the United States requests that they be filed under
27  seal.

        [6]  According to "Vicky's" attorney, "Vicky" has received notice of 1022 restitution orders as of
28  January 10, 2018.  ECF 46 at p. 11.

207 GEB.  However, the Department of Justice's records show that the 14 other documented restitution orders awarded to "Vicky" in 2016 and 2017 (post-Galan) by district courts in the Ninth Circuit ranged from $1,000 to $5,000.

2.      Reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses.

While the United States appreciates the sentiment behind the Supreme Court's inclusion of this factor, in practice it is unlikely to ever result in more than mere speculation.  It is fair to say, however, that "Vicky" is a series of child pornography that will remain highly trafficked.  One metric that the government can provide is that between the *Cantrelle* case and this date, the number of convictions and restitution awards for "Vicky" has increased from 309 to at least 1005.  *See Cantrelle*, No. 2:11-CR-00542-GEB, 2013 WL 1624824, at *9 (E.D. Cal. Apr. 15, 2013) (relying on the government's brief after remand from the Ninth Circuit.)

3.      Any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted).

The United States can represent, consistent with the representation made above, that the Vicky series is among the more highly trafficked series of child pornography.  Accordingly, there are many offenders who will never be caught and convicted.  This also means, however, that the ongoing damage from the trafficking of the images provides a disproportionately larger impact on this victim.

4.      Whether the defendant reproduced or distributed images of the victim.

Based on the evidence to date, there is no evidence that this defendant distributed images of "Vicky."

5.      Whether the defendant had any connection to the initial production of the images.

The defendant does not have any known connection to the initial production of the "Vicky" images.

6.      How many images the defendant possessed.

According to analysis by the National Center for Missing and Exploited Children, the defendant possessed 14 videos from the "Vicky" Series.

Based on the foregoing information, the United States requests that the Court order restitution in

the manner prescribed by law.

## IV. CONCLUSION

Based on the foregoing, it is respectfully requested that the Court (1) grant the United States' motion to depart downward, pursuant to Section 5K1.1 of the Sentencing Guidelines, (2) impose a sentence that is 10 percent below the low-end of the applicable guideline range as determined by the Court, and (3) order restitution in this case in the manner prescribed by law.

Dated: January 12, 2018

McGREGOR W. SCOTT
United States Attorney

By: /s/ SHELLEY D. WEGER
SHELLEY D. WEGER
Assistant United States Attorney