1          IN THE UNITED STATES DISTRICT COURT

2             EASTERN DISTRICT OF CALIFORNIA

3            BEFORE THE HONORABLE TROY L. NUNLEY

4

5    UNITED STATES OF AMERICA,

6                    Plaintiff,
     -vs-                          Sacramento, California
7                                  No. 2:16-CR-00190
                                   Thursday, January 18, 2018
8    JEFFREY MILES HAYES,          9:33 a.m.

9                    Defendant.
     _____/

10

11                    --oOo--

12          REPORTER'S TRANSCRIPT OF PROCEEDINGS

13              RE: JUDGMENT AND SENTENCE

14                    --oOo--

15   APPEARANCES:

16   For the Plaintiff:     OFFICE OF THE UNITED STATES ATTORNEY
                            SHELLEY D. WEGER
17                          Assistant U.S. Attorney
                            501 I Street, Suite 10-100
18                          Sacramento, CA  95814

19   For the Defendant:     MICHAEL D. ROSS
                            Attorney at Law
20                          701 L Street, 9th Floor
                            Sacramento, CA  95814
21
     Official Court Reporter:  Kacy Parker Barajas
22                            CSR No. 10915, RMR, CRR, CRC
                              501 I Street
23                            Sacramento, CA  95814
                              kbarajas.csr@gmail.com

24

25   *Transcript produced by computer-aided transcription.*

1    SACRAMENTO, CALIFORNIA, THURSDAY, JANUARY 18, 2018, 9:33 AM

2                                --oOo--

3         THE CLERK:  Calling case number 16-0190, United States

4    versus Jeffrey Miles Hayes on for judgment and sentencing, your

5    Honor.

6         MS. WEGER:  Good morning, your Honor.  Shelley Weger

7    on behalf of the United States.

8         MR. ROSS:  Good morning, your Honor.  Mike Ross on

9    behalf of the defendant who is present here in custody.

10        THE COURT:  All right.  Thank you.

11        All right.  This matter is on calendar for receipt of

12   the probation officer's report and for imposition of judgment

13   and sentence.  On July 20th, 2017, the defendant appeared

14   before this Court with his attorney and entered a plea of

15   guilty to one count in the indictment charging receipt of child

16   pornography with a prior conviction in violation of 18 U.S.C.

17   section 2252(a)(2).

18        The matter was referred to the probation office for a

19   pretrial sentence evaluation and report.

20        The Court has read and considered the pretrial

21   sentence report dated October 12th, 2017.

22        Counsel, have you received and read a copy of the

23   presentence report and have you had an opportunity to discuss

24   it with your client in detail?

25        MR. ROSS:  Yes, your Honor, I have.

1          THE COURT:  All right.  Mr. Hayes, have you received

2     and read a copy of the presentence report?

3          THE DEFENDANT:  Yes, I have, sir.

4          THE COURT:  And sir, have you had an opportunity to

5     discuss it with your attorney in detail?

6          THE DEFENDANT:  Yes, I have.

7          THE COURT:  All right.  I note for the record that

8     there were no written objections to the presentence report by

9     the defendant.  However, I will also note for the record at

10    this time that the government has filed objections to the

11    presentence report which I will discuss in a moment.

12          Mr. Ross, are there any objections to any statements

13    of material fact, sentencing classifications, sentencing

14    guideline ranges, and/or policy statements filed that the Court

15    is not aware of?

16          MR. ROSS:  No, your Honor.  With the exception of I

17    would like to address the Court with regard to the government's

18    5K1.1 motion at the appropriate time.

19          THE COURT:  Okay.  Thank you.  All right.  As I've

20    indicated initially, it is my intent to address the

21    government's objections to the PSR.  And, you know, the

22    argument that the government makes is that United States

23    Sentencing Guidelines section 3A1.1(b), which would otherwise

24    add a two-level enhancement, should apply in this proceeding.

25          Counsel argues that the probation officer

1    misinterpreted the application of 2G2.2(b)(4) as precluding the

2    application of the vulnerable victim enhancement even where a

3    defendant possessed both sadomasochistic images and images

4    depicting the sexual abuse of an infant or toddler, the

5    vulnerable victim enhancement.

6         I don't think there's any doubt -- so let's get this

7    out of the way first.  I don't think there's any doubt that

8    based on the material that was seized as well as based on what

9    is contained within the factual basis for the defendant's plea

10   that there are multiple images depicting vulnerable victims.

11   There's also multiple images depicting sadistic masochistic

12   images involving prepubescent girls.  I don't think there's any

13   doubt about that, and I don't think, Counsel, you would argue

14   that those didn't exist.  Do you want to argue that multiple

15   images don't exist, Counsel?

16        MR. ROSS:  I will not argue that, your Honor.

17        THE COURT:  All right.  Thank you.  Now I've actually

18   looked over the statute, and quite frankly there was an

19   amendment -- amended amendment to the statute I believe it was

20   in 2016.  It was effective November of 2016.  And one of the

21   things that the amendment actually did is the amendment

22   indicates quite clearly that essentially if the offense -- and

23   the new statute reads as follows:  It says, if the offense

24   involved material that portrays (A) sadistic or masochistic

25   conduct or other depictions of violence; or (B) sexual abuse or

1   exploitation of an infant or toddler.  That is United States

2   sentencing guidelines 2G2.2(b)(4).

3           Now the (B) section was the section that was added in

4   November of 2016, and it was added because the argument -- and

5   there was a split in the circuit courts because the argument

6   essentially was that the (A) section subsumed sexual

7   exploitation or -- sexual abuse or exploitation of an infant or

8   toddler, and there were arguments that that conduct was

9   subsumed within (A), and there were contrary arguments that it

10   wasn't.  And that was the split within the circuits.

11           And it became -- and in response to the split in the

12   circuits, United States Sentencing Commission added the

13   (B) section.  However, that in no way diminished in any manner

14   the (A) section.  Now the note, as I read the note, and the

15   note is quite clear, at least in the Court's estimation and it

16   talks about the interaction of subsection (b)(4)(B), which is

17   the added -- the section they added with the vulnerable victim

18   enhancement under section 3A1.1(b).  And it clearly states that

19   if subsection (b)(4)(B) -- 2G2.2(b)(4)(B) applies, do not apply

20   3A1.1(b).  That's clear, okay?

21           But what it doesn't say, it doesn't say do not

22   apply -- if subsection (b)(4)(A) applies, do not apply

23   3A1.1(b).  So my concern is that -- well, basically I agree

24   with the government, and I think that the section is very clear

25   on its face because it doesn't -- and quite frankly, what it

1   doesn't say, it doesn't say don't apply 2G2.2(b)(4), which in

2   its entirety actually reads (A) or (B), but it doesn't say

3   don't apply that.  It says don't apply if (B) -- if subpart

4   (B), and in this particular case you have both.  You do have

5   both.  You have the portion that was added.  You have sadistic,

6   masochistic images, and you also have images depicting the

7   abuse of extremely young children such as infants or toddlers.

8   And I'm not going to go into it with any degree of specificity

9   because quite frankly the images in this case are harrowing

10  images, and I appreciate the fact that counsel concedes that

11  because it saves me from having to go into describing what

12  those images show.

13          So do you want to be heard on the Court's

14  interpretation of the statute?

15          MR. ROSS:  Submit, your Honor.

16          THE COURT:  All right.  All right.  So the Court has

17  amended and the Court will grant the government's motion to

18  correct the PSR, and I do fully intend to add a two-level

19  enhancement.  Do you wish to be heard any further?

20          MS. WEGER:  Only to clarify that -- because the PSR

21  currently applies 2G2.2(b)(4)(A) and (B), I guess just to make

22  sure that it's amended just to apply (A) and then the two-level

23  enhancement under chapter 3.

24          THE COURT:  Let me see.

25          MS. WEGER:  It's paragraph 29.

7

1          THE COURT:  Paragraph 29, let me find it.  I think

2    you're referring to the computation of the sentence; is that

3    correct?

4          MS. WEGER:  Yes.

5          THE COURT:  Okay.  Just a moment.  Now which one are

6    you referring to?  Are you referring to the four-level

7    enhancement?

8          MS. WEGER:  Yes.  Where it says -- the very last

9    sentence where it says are added pursuant to 2G2.2(b)(4)(A) and

10   (B).

11         THE COURT:  I actually took out (A) and (B).

12         MS. WEGER:  Okay.

13         THE COURT:  And the way I read it is this.  This is

14   the way I intend to read it into the record.  A four-level

15   enhancement for material that portrays (A) sadistic or

16   masochistic conduct or other depictions of violence; or (B)

17   sexual abuse or exploitation of an infant or toddler pursuant

18   to United States Sentencing Guidelines section 2G2.2(b)(4).

19         In other words, I'm reading the statute in its

20   entirety.  But if you want me to be clear on that, I actually

21   can because that four-level enhancement would otherwise apply

22   to the (B) section, correct?

23         MS. WEGER:  Right.  So I just want to make sure (B) is

24   not being applied because otherwise then we are prohibited from

25   applying the two-level enhancement under chapter 3.  So I just

1    wanted that to be clear.

2            THE COURT:  Are you okay with the way I intend to read

3    it?

4            MS. WEGER:  I think under that reading, my only

5    concern would be that perhaps it sounds like (B) is also being

6    applied, so that would be my only concern.

7            THE COURT:  Okay.  So I agree with you.  And I

8    intended -- I have (B) put in yellow.  I was just going to read

9    the entire portion of that guideline, but I agree with you that

10   (B) should be taken out just for clarity.

11           Any objection, Counsel?

12           MR. ROSS:  No objection.

13           THE COURT:  All right.  Just a moment.  So it will

14   read as follows:  A four-level enhancement for material that

15   portrays sadistic or masochistic conduct or other depictions of

16   violence.  And pursuant to United States Sentencing Guidelines

17   section 2G2.2(b)(4), and just for clarity, I can put (A) in

18   there because (A) would be clearer because you're proceeding

19   under (A) as to that enhancement.

20           MS. WEGER:  Correct.

21           THE COURT:  Any objection?

22           MR. ROSS:  No objection, your Honor.

23           THE COURT:  All right.  Just a moment.

24           All right.  Anything further on the government's

25   objections relative to 2G2.2(b)(4)?

1          MS. WEGER:  No, your Honor.

2          MR. ROSS:  No, your Honor.

3          THE COURT:  All right.  There being no other

4    objections to the findings in the presentence report, the Court

5    adopts those findings and determines those findings to be true

6    and correct.

7          The Court does find an advisory offense level of 44.

8    This includes a base offense level of 22, a two-level

9    enhancement for material involving a prepubescent minor

10   pursuant to United States Sentencing Guidelines section

11   2G2.2(b)(2), a two-level enhancement because the defendant knew

12   or should have known that a victim of the offense was a

13   vulnerable victim pursuant to United States Sentencing

14   Guidelines section 3A1.1(b), a five-level enhancement for

15   distributing material in exchange for any valuable

16   consideration but not for pecuniary gain pursuant to

17   United States Sentencing Guidelines section 2G2.2(b)(3)(B), a

18   four-level enhancement for material that portrays a sadistic or

19   masochistic conduct or other depictions of violence pursuant to

20   United States Sentencing Guidelines section 2G2.2(b)(4)(A), a

21   five-level enhancement for engaging in a pattern of activity

22   involving the sexual abuse or exploitation of a minor pursuant

23   to the United States Sentencing Guidelines section 2G2.2(b)(5),

24   a two-level enhancement for use of a computer or an interactive

25   computer service for the possession, transmission, receipt, or

1    distribution of material pursuant to the United States

2    sentencing guidelines section 2G2.2(b)(6), a five-level

3    enhancement as the offense involved 600 or more images.  And it

4    should be noted that there were 2,448 images contained within

5    the KIK or K-I-K application.  There were images of sexually

6    explicit images of children pursuant to United States

7    Sentencing Guidelines section 2G2.2(b)(7)(D), and a three-level

8    reduction for acceptance of responsibility pursuant to

9    United States Sentencing Guidelines section 3E1.1(a) through

10   (b).

11        The advisory criminal history category is II.  The

12   guideline range is, therefore, life.  However, the statutory

13   maximum is 40 years.

14        The Court also notes that the government has filed a

15   sentencing memorandum with this Court seeking a downward

16   departure of 10 percent pursuant to United States Sentencing

17   Guidelines section 5K1.1.

18        And Mr. Ross, I know you wish to be heard, but I will

19   tell you that the Court intends to go along with the

20   government's recommendation.  You may proceed.

21        MR. ROSS:  Thank you very much, your Honor.

22   Respectfully before the Court and the government to Sentencing

23   Guideline 5K1.1(a) and there are criteria here that is

24   suggested to the Court should be taken into consideration with

25   regard to the value of the substantial assistance to

1    authorities by my client, and there are five criteria under sub

2    (a) there.  I'd like to go to number 5 there, the timeliness of

3    the defendant's assistance.

4         The actual use of my client's assistance by law

5    enforcement was an interview that took place on August 10th,

6    2017.  My client retained me August 15th, 2016, gave me a card

7    for a Detective Williams who was with the Joint Federal Task

8    Force, and I contacted Detective Williams immediately and told

9    the detective that my client not only wanted to walk in with

10   his lawyer and surrender, if that were necessary, but also to

11   assist in any way that the government or the County of

12   Sacramento wished with regard to other users, purveyors,

13   suppliers of pornography.

14        I had at least 12 conversations with Detective

15   Williams over the next year or so.  This was after my client

16   got taken into custody.  On the same day that the indictment

17   came down, the arrest warrant was issued by the Court, and

18   that's September 29th of 2016.

19        No advantage was ever taken of my client's ability to

20   provide what I would consider to be substantial information

21   with regard to the apprehension or detection of other

22   possessors or purveyors or suppliers of child pornography until

23   the 30th of August of 2017.  So that's almost a year that's

24   gone by, actually a bit more from the time I first contacted

25   Detective Williams.  And the timeliness here obviously is not

1    the fault of my client because he consistently through counsel

2    offered to cooperate in any way, shape, or form up to and

3    including being an uncover person to perhaps catch other

4    suppliers or providers of child pornography.

5            So the reason that I got from law enforcement was,

6    well, as time goes on, the information gets stale, and it's

7    usefulness is diminished by the passage of time.  I don't know

8    that that was a factual statement or not, but apparently that

9    was part of the reason for the -- what I considered to be a

10   curiously long delay in getting to my client to see if he had

11   something that really could be a silver bullet in finding other

12   suppliers of pornography here.

13           I'd like to refer the Court to 5K1.1(a)(2), the

14   truthfulness and completeness and reliability of the informant.

15   I was present when law enforcement interviewed my client at the

16   law enforcement annex that's just south of McClellan airfield

17   up here on the 30th of August of last year.  We spent

18   approximately three hours, maybe a bit more, and my client was

19   forthcoming.  He was forthright in answering every question

20   that was posed to him by law enforcement.  He appeared to be

21   offering additional information outside the scope of any

22   question that was asked that perhaps might have been a surprise

23   to law enforcement, might not have.  I don't know because I

24   don't know what they have.  But my client finally, given a

25   chance to cooperate, with his assistance -- substantial

1    assistance to authorities here, cooperated fully with law

2    enforcement, again offered to act beyond that just supplying

3    information and to be a shill, if you will, to try to entrap

4    other people that are in the business of providing this child

5    pornography.

6         Subsection (1) of subsection (a) of 5K1.1, the

7    significance and usefulness, I have no idea what the

8    significance and usefulness.  No one's made a report to me of

9    that.  I suppose that that's par for the course on this.  But

10   the detail that I heard being given was substantial, whether

11   that's repetitive or redundant to what the -- what law

12   enforcement, the FBI, and the San Francisco -- not San

13   Francisco, excuse me, the Sacramento Sheriff's Department had

14   is beyond the scope of my knowledge at this point.

15        But I'm offering to the Court the fact that my client,

16   from the very first contact with law enforcement that left him

17   at large, so to speak, from at least August 15th of 2016 to

18   September 29th of 2016, left him out there.  And his offer of

19   cooperation was offered several times through counsel, and it

20   was not taken up until August of 2017.

21        And I think that the 10 percent offer, the diminution

22   of the charge by 10 percent is inadequate.  I'm offering to the

23   Court and respectfully suggesting to the Court that a 50

24   percent, that's 5-0, is more appropriate considering the

25   unwavering cooperation or offer of cooperation of my client.

1    And the final exposition of his knowledge and ideas and

2    opinions too, how these things happen and how they can be

3    manipulated by law enforcement at the August 30th, 2017,

4    interview of my client, and this should be taken to the Court

5    as substantial assistance to law enforcement, considerably

6    substantial, your Honor.  Lack of timeliness here is

7    unfortunate, certainly of no fault of my client, and we would

8    ask for a 50 percent reduction.

9            THE COURT:  All right.  Ms. Weger, do you wish to be

10   heard?

11           MS. WEGER:  Yes, your Honor.  I guess just generally

12   the government does not have to offer individuals an

13   opportunity to cooperate.  In this instance, 10 percent is an

14   appropriate amount for a downward departure.  The defendant

15   during our discussions did not identify any individuals who

16   were purveying or any specific individuals who were --

17   basically, that led to any other cases.  As you know, in many

18   of these cases people are using online media, and once we have

19   the defendant's computer, that often contains all the

20   information we would potentially need to go after other

21   individuals.  I'm not aware of any other cases that have

22   resulted as of yet from this investigation.  However, we did

23   give the defendant an opportunity to come in and speak with us.

24   There was nothing in particular that was really helpful.

25   However, because he did allow us to record his statement, it

1    may be helpful in training other law enforcement officers just

2    kind of about the patterns and conduct of these types of

3    offenders, and for that reason, we think 10 percent is

4    appropriate.

5              THE COURT:  Do you care to address -- one of the

6    things that Mr. Ross said is the government's characterization

7    of Mr. Hayes' assistance as being substantial assistance, as

8    opposed to simple assistance.  And I've seen it both ways.

9    I've seen where government attorneys have come in before the

10   Court and indicated that a defendant has assisted the

11   government, and I think substantial assistance is probably the

12   highest term that you use in -- as it respects these motions

13   that are filed under 5K1.1.  Do you care to address that issue?

14   Because your words are at odds with that.  And the reason I'm

15   asking you to do that is because your words are simply at odds

16   with that.  You indicated quite clearly to the Court that while

17   he gave us assistance, you know, it sounded to me like you were

18   saying it wasn't substantial assistance.

19             MS. WEGER:  I'm sorry, yes.  Well, I think it was

20   substantial in the sense that it is helpful to law enforcement.

21   I mean, that's why we agreed to speak with him because we

22   thought it would be beneficial.  So in this case he did offer

23   general information about these types of offenders.  And by

24   having the recording, I think that is substantial and goes a

25   little bit above and beyond.  We did recognize his willingness

1   to come in and speak to us and tell us what he knows.  I'm just

2   saying it did not lead to any other prosecutions or leads, and

3   it didn't necessarily further, in terms of the factual content,

4   what we could not have already gathered perhaps from the

5   devices themselves.

6           THE COURT:  I guess what I'm saying in essence is

7   this.  I've seen a number of 5K1.1 motions in these types of

8   cases, in drug cases, in different types of cases.  I've rarely

9   seen, you know, a motion where a government attorney has come

10  in here and said a substantial assistance is 10 percent, you

11  know, for example.  I think at a minimum I've seen 15 percent.

12  At a minimum, I've seen 15 percent.  I've yet to see 10

13  percent.  But in any event, do you care to be heard on that?

14          MS. WEGER:  Well, I guess I can't speak to what you've

15  seen, but under what I'm aware of, we can offer any amount, and

16  typically anything above ten percent, surely 50 percent would

17  be reserved for very rare circumstances.

18          THE COURT:  That you would classify as substantial

19  assistance?

20          MS. WEGER:  Yes.  Yes, your Honor.

21          THE COURT:  All right.  Mr. Ross, do you care to be

22  heard any further?

23          MR. ROSS:  Your Honor, I'm just concerned about the

24  lack of timeliness of the opportunity afforded my client to

25  cooperate.  And it's certainly speculation, but I would think

1    that the sooner you get to that sort of information, the more

2    likely you are to have something worth having that might lead

3    to something else.  We'll never know that because a year went

4    by, more than a year went by since that first offer was made.

5    I don't think that's the defendant's fault.

6            Your Honor, the statutory minimum on this offense is

7    15 years, maximum 40, as the Court well knows.  I think that

8    the Court seeks to go with the statutory sentencing that 15

9    years is appropriate given my client's willingness to

10   cooperate, the admission by the government that it was

11   substantial cooperation, the lack of any tangible benefits from

12   that at this point, if that exists, I don't think should be

13   part of the Court's judgment considering the lack of timeliness

14   due to the government's delay.

15           THE COURT:  All right.

16           MS. WEGER:  Your Honor, one more comment.

17           THE COURT:  Sure.

18           MS. WEGER:  I would just like defense counsel to

19   identify what specifically could have resulted had the

20   cooperation been earlier on.  He's making general statements

21   without any indication as to what additional cooperation would

22   have been provided had we done this earlier.

23           THE COURT:  All right, Counsel?

24           MR. ROSS:  I'm happy to address that, your Honor.  I

25   had several conversations with law enforcement with regard to

1    this.  Apparently a user's absence from the Internet for a

2    significant period of time is a red flag to other users and

3    certainly providers that, uh-oh, something's happening here.

4    The cops have gotten to him.  Something has happened.  And so

5    this was part of the rationale for the characterization of my

6    client's usefulness as being diminished as time went on.  We're

7    getting again into the area of speculation.  We have no idea

8    how useful something would have been had it been gleaned by law

9    enforcement the first few days or weeks and which was

10   available, as mentioned many times before in this conversation

11   by the defendant.

12            THE COURT:  All right.

13            MS. WEGER:  My only response to that is that we

14   already know who was exchanging child pornography based on

15   what's on the devices.

16            THE COURT:  Well, you know, they don't use names,

17   obviously.  They use sort of monikers.  So you know --

18   obviously you know perhaps where it was coming from.  You can

19   probably trace where it was coming from, but I don't think you

20   know what any --

21            MS. WEGER:  Well, the defendant didn't identify any

22   names.  We did ask about that.

23            THE COURT:  Right.  You stated that earlier.  So all

24   right.  Anything further?

25            MR. ROSS:  Submitted, your Honor.

1          THE COURT:  All right.  Is there any reason judgment

2     and sentence should not proceed at this time?

3          MS. WEGER:  No, your Honor.

4          MR. ROSS:  No, your Honor.

5          THE COURT:  All right.  Are there any victims?  You

6     indicated that there were -- you had a victim impact statement

7     that you wish to read.  By the way, I just want to indicate

8     there were at least two supplements to the PSR.  The

9     supplements included, in one instance, I believe it was the

10    victim in the Vicky series, she wrote a letter, a very

11    heartfelt letter to the Court, and I just want you to realize

12    that the Court did read that letter and considered that letter.

13         Of course Vicky is now an adult, and she talked about

14    the impact it has on her married life.  She now has a child.

15    She's trying to move forward with her life.  I think it's

16    pretty telling that, if you look at her life right now, it is

17    pretty -- you know, she's still dealing with the trauma, and in

18    fact she indicated quite clearly to the Court that she hasn't

19    sought counseling at this point because she's afraid to bring

20    up and dredge up the memories of what happened to her.

21         And so I also received a letter from an attorney in

22    regards to restitution for Vicky.  She talked about and I've

23    received the psychiatric report relative to the impact on Vicky

24    as well.  Were there any other supplements to the PSR that I

25    didn't receive that you care to reference?  I've considered all

1  of them.

2         MS. WEGER:  I don't believe this one was in the PSR.

3  This is a letter from Vicky's husband, and Vicky's attorney has

4  asked that it be read aloud in court.  So that was my request.

5         THE COURT:  I believe there was a letter to the Court

6  from Vicky's husband as well, but you can go ahead and proceed,

7  please.

8         MS. WEGER:  (Reading)  "In my home every day is

9  riddled with challenges, each with its own challenges that

10  plague the mind and sear a broken heart towards callous

11  obscurity.  We chase the ghosts of the past and battle the

12  fantoms that fight to keep the darkness circulating.

13         Unfortunately, time can't heal all things.  This is

14  especially true as we face the persecution of a wound opened

15  again and again for the pleasure of strangers.  You have more

16  impact than you know.  It is our desire, not only that justice

17  be served, but that true change would be enacted through the

18  enlightenment of this unfortunate situation.  I assure you that

19  child pornography is not a victimless crime.  There are not --

20  these are not the recorded tales of mutual love but of the

21  violation of a child's trust and the savage destruction of

22  their childhood resulting in a fractured and unforgiving

23  adulthood.

24         There are many effects of child pornography, some more

25  extreme than others.  My wife suffers from dissociative

1  personality disorder which means her memory shuts off to

2  protect her from triggers to perceived trauma.  Many of these

3  triggers, some as simple as a word, have been discovered.  But

4  as you might guess, there are still new scenarios encountered

5  all the time.  We are still unable to celebrate her birthday

6  because of events that were beyond her control, and their

7  effects still linger today.

8         Our family must guard our personalities very closely

9  when using social media and other Internet accounts.  We've

10  been plagued by stalker after stalker calling themselves quote,

11  unquote, fans and being oblivious to the damage they are

12  causing a survivor of one of the most traumatic events a human

13  can experience.

14         My aim is not to hurt you with these words.  I pray

15  that you are unaware of the damage you have caused.  My

16  greatest hope is that we can meet with the realization that

17  child pornography must stop.  There are too many little girls

18  with broker hearts walking around feeling empty because someone

19  wanted what was not theirs and then took it by force and

20  coercion.  You are a participant in that crime.  You became

21  part of the problem.  I am asking you now to help us make

22  amends for your sins and the sins of many.  Please speak out

23  against this act.  Impact the world around you for good and

24  turn away from what I can only describe as a great evil in our

25  midst.  This evil creeps into the lives of otherwise good men

1    and begins to corrupt the heart.

2            I am imperfect, so how could I expect you to be?  You

3    have already been forgiven, and I want nothing more than your

4    full restoration without mar of your past habits and appetites.

5    Unfortunately, that means consequences, those that challenge

6    you and place you in new scenarios in life.  I believe that God

7    has a plan for you.  He has not cast you aside or condemned you

8    outright.  Please consider the ways that you can turn your

9    perspective around, experience true repentance, and walk freely

10   as a redeemed man.

11           I don't wish you pain.  I don't wish you sorrow.  I

12   only ask your assistance in putting the light back in so many

13   broken little girls' eyes.  Help put an end to child

14   pornography.  You have more impact than you know.  Sincerely,

15   Vicky's husband."

16           THE COURT:  All right.  Thank you.

17           Does the defendant wish to make a statement?  Excuse

18   me.  Before I hear from the defendant, does the government wish

19   to make a statement?

20           MS. WEGER:  Your Honor, just very briefly.  We believe

21   that a low end sentence with a 10 percent departure pursuant to

22   5K1.1 is appropriate.  Although the low end or this resulting

23   sentence is a heavy sentence, we don't believe any further

24   variance and/or downward departure is warranted in this case.

25   As set forth in the PSR, the uncontested facts, this crime is

1  very serious.  The defendant was utilizing different types of

2  social media and applications to chat with other individuals

3  about his sexual interest in young children and to exchange

4  child pornography.  And then based on his history and

5  characteristics, his prior conviction, and the hands-on

6  offenses against children, more than one, make this obviously a

7  very serious crime that needs to be punished.

8       We do acknowledge his acceptance of responsibility and

9  his attempt to assist the government, and for that reason we

10 think that the guidelines have appropriately captured the

11 nature of this offense and that a low end sentence is

12 appropriate.

13      THE COURT:  All right.  Counsel, you wish to be heard?

14      MR. ROSS:  Your Honor, my client would like to make a

15 statement to the Court.

16      THE COURT:  All right.  You may proceed, sir.

17      THE DEFENDANT:  Thank you very much, your Honor.  I

18 don't know exactly what I have to say except that, you know,

19 I -- I -- I understand what I've done.  And yes, I did take

20 responsibility for it.  I will never try to make excuses for

21 it.  I can only hope to receive help that -- maybe the help

22 that I should have gotten in the first place through the courts

23 and in my incarceration that will make me the tool that is

24 mentioned in the letter as opposed to -- as opposed to just

25 sloughing it off and moving on.

1          I understand my sentence is going to be heavy.  I've

2     accepted that, and I just want to apologize once again for

3     putting everybody in this situation, including myself, and just

4     thank you for your compassion shown today.  I think that's all

5     I have to say.

6          THE COURT:  All right.  Counsel, you wish to be heard

7     any further?

8          MR. ROSS:  Submitted, your Honor.

9          THE COURT:  All right.  Just a moment.  All right.

10    You know, just let me say this.  You know, after hearing the

11    words from Vicky's husband coupled with -- by the way, there

12    was also another victim, Maureen.  She was in the Lighthouse

13    series of images.  Does she wish to make a statement, or do you

14    have a statement from Maureen?

15         MS. WEGER:  No.  I do not have a statement for her.

16    While we're discussing her, I would ask that another date be

17    set for restitution.

18         THE COURT:  I intend to do that.

19         You know, listening to what the husband had to say and

20    coupled with what Vicky had to say in the reports that the

21    Court has received relative to Vicky, you know, this just

22    confirms what we all know to be true, that these -- when you

23    violate children, it just sticks with them for the rest of

24    their lives.  They just continue to be revicitimized over and

25    over and over again.  And I can understand, for example, why

1   Vicky or Maureen or any other victim of abuse really doesn't

2   want to participate in these proceedings because it's really

3   harrowing and really tough.

4          That being said, one of the things the defendant

5   talked about is receiving treatment.  Yeah, it would have been

6   nice if you had received treatment the first moment you either

7   touched a child or you started looking at pornographic images

8   of a child.  But you didn't do that.  And the reality is this.

9   You went years just engaging in this conduct and just simply

10  destroying these lives.  There's a cost that has to be paid,

11  and you're going to pay that cost.

12         Now granted, the government has graciously agreed to

13  allow you the possibility of a departure under 5K1.1.  And once

14  the government files a 5K1.1 motion and makes a recommended

15  sentence, it's simply a recommended sentence, and then the

16  Court has the opportunity to depart even further.  I'm not

17  confined to sentence you consistent with the government's

18  recommendation.

19         Now that being said, I think your counsel brought up

20  some very interesting points relative to the 5K1.1 motion in

21  this particular case that inures to your benefit.  In no way am

22  I condoning your behavior, but I do think it is a valuable tool

23  that law enforcement can use to stop other pedophiles like you

24  from committing these acts, and hopefully they can stop them

25  early enough where they won't destroy some young victim's life

1  as you did.

2         And one of the things that I'm mindful of and I think

3  that the husband of Vicky said it, you know, there's no words

4  for these acts that you've committed against these children,

5  and it's really -- you know, I think he used the term "evil,"

6  is that what he said, "evil"?  You know, that's really the only

7  word for it.  And there's nothing I can say to combat evil.

8  I'm not God.  The only thing I can do is hope that other people

9  like you are caught because it's a compulsion that you have and

10  that other men like you have.  I hope they get treatment.  I

11  hope you get treatment for it while you're in prison because

12  you're going to spend quite a bit of time in prison.  So

13  hopefully while you're in prison, you can get treatment for it.

14         All right.  Therefore, it's the judgment and sentence

15  of this Court pursuant to the Sentencing Reform Act of 1984

16  that defendant Jeffrey Hayes will be committed to the custody

17  of the Bureau of Prisons to be imprisoned for a term of 400

18  months.

19         Defendant will pay a special assessment of $5,100

20  immediately.  The Court does find the defendant does not have

21  the ability to pay a fine, and therefore, imposition of fine is

22  hereby waived.  It is further ordered the defendant pay

23  restitution in the amount of $10,000 to the victim in the

24  victim -- excuse me -- to the victim in the Vicky series of

25  child molestation images.  Payment to begin immediately.

1    Restitution is to be sent to the Clerk of the Court who shall

2    forward it to the victim as described in the restitution

3    section.  If incarcerated, payment of restitution is due during

4    imprisonment at the rate of not less that $25 per quarter, and

5    payment shall be through the Bureau of Prisons inmate

6    responsibility program.  Interest is hereby waived.

7         The Court intends to set a restitution hearing 60 to

8    80 days from today's sentencing hearing as to the victim,

9    Maureen, from the Lighthouse series of child molestation

10   images.  The preliminary order of forfeiture filed

11   September 22nd, 2017, is hereby made final and shall be

12   incorporated into the judgment.

13        Upon release from imprisonment, the defendant shall be

14   placed on supervised release for a term of 300 months.  Within

15   72 hours of release from the custody of the Bureau of Prisons,

16   the defendant shall report in person to the probation office in

17   the district to which the defendant is released.

18        While on supervised release, the defendant shall not

19   commit another federal, state, or local crime, shall not

20   possess a firearm, ammunition, destructive device, or any other

21   dangerous weapon and shall not illegally possess or use any

22   controlled substances.

23        The defendant shall cooperate in the collection of DNA

24   as directed by the probation officer and shall comply with the

25   standard conditions which have been recommended by the

1    United States Sentencing Commission and adopted by this Court.

2         The defendant shall also comply with the requirements

3    of the Sex Offender Registration Notification Act pursuant to

4    42 U.S.C. section 1690 et seq. as directed by the probation

5    officer, the Bureau of Prisons, or any other state sex offender

6    registration agency in which he works, resides, is a student,

7    or was convicted of a qualifying offense.

8         The defendant shall submit to one drug test within 15

9    days of release from imprisonment and at least two periodic

10   drug tests thereafter not to exceed four drug tests per month.

11        The Court does adopt the special conditions

12   recommended by the probation officer on pages 21 to 23 of the

13   presentence report and imposes all of those listed as special

14   conditions.

15        The Court does find that the sentence is sufficiently

16   long to punish the defendant, deter others from similar

17   criminal conduct, but not be longer to -- longer than necessary

18   to achieve those stated goals, and therefore meets the

19   requirements of 18 U.S.C. section 3553(a).

20        Sir, you do have a right to appeal from your

21   conviction if you believe that your guilty plea was somehow

22   unlawful or involuntary or if there is some other defect in the

23   proceedings that was not waived by your plea.

24        You also have a statutory right to appeal your

25   sentence under certain circumstances, particularly if you think

1    the sentence is contrary to law.  A defendant may waive those

2    rights as part of the plea agreement, and you have entered into

3    a plea agreement which waives some or all of your rights to

4    appeal the sentence itself.  Such waivers are generally

5    enforceable, but if you believe a waiver is unenforceable, you

6    can present that argument to the appellate court.  With few

7    exceptions, any notice of appeal must be filed within 14 days

8    of judgment being entered in your case.  If you cannot afford

9    the cost of an appeal, you will be permitted to proceed without

10   the payment of costs.  If you cannot afford counsel, one will

11   be appointed to represent you.  If you request it, the Clerk of

12   the Court will prepare and file a notice of appeal on your

13   behalf.

14          The Court is going to recommend the defendant be

15   housed at I believe it's Terminal Island in California; is that

16   correct?

17          MR. ROSS:  Yes, your Honor.

18          THE COURT:  All right.  The Court will recommend the

19   defendant be housed at Terminal Island in California, but this

20   recommendation is subject to the security classification of the

21   defendant and space availability as determined by the Bureau of

22   Prisons.

23          I don't believe there are any other counts that need

24   to be dismissed; is that correct?

25          MS. WEGER:  No, your Honor.

1      THE COURT:  Okay.  Great.  It is ordered that the

2  defendant is to remain in the custody of the United States

3  Marshal pending delivery to the Bureau of Prisons.  That is the

4  order.

5      Thank you, Counsel.

6      MS. WEGER:  And a specific date will be set for

7  restitution maybe at the end of March?

8      THE COURT:  Yes.  Can you give me a date, Michele.

9      THE CLERK:  March 22nd.

10      THE COURT:  Mr. Ross, does that work for your

11  calendar?

12      MR. ROSS:  What day of the week is that, may I

13  inquire?

14      THE CLERK:  It's a Thursday.

15      MR. ROSS:  March 22nd will be just fine.

16      THE COURT:  March 22nd, 2018, 9:30 in this courtroom.

17      MR. ROSS:  Thank you.

18      THE COURT:  Thank you.

19      (Discussion held off the record.)

20      THE COURT:  I believe I did indicate the defendant --

21  Madam Court Reporter, did I indicate that the defendant shall

22  be placed on supervised release for a term of 300 months?

23      THE REPORTER:  Yes, you did.

24      MR. ROSS:  Your Honor, is the presence of the

25  defendant necessary at the restitution hearing?

1          THE COURT:  We can waive his appearance, if you're

2    agreeable.

3          MR. ROSS:  Mr. Hayes, do you wish to have your

4    appearance waived for that?

5          THE DEFENDANT:  Yes, sir.

6          MR. ROSS:  I will be appearing without you here; you

7    understand that?

8          THE DEFENDANT:  Yes.

9          MR. ROSS:  That's your wish?

10          THE DEFENDANT:  Yes.

11          THE COURT:  All right.  Defendant's appearance is

12    waived.

13          Thank you.

14          MR. ROSS:  Thank you.

15             (The proceedings adjourned at 10:19 a.m.)

16                         --oOo--

17    I certify that the foregoing is a correct transcript from the

18    record of proceedings in the above-entitled matter.

19                         /s/ Kacy Parker Barajas

20                         _____
                         KACY PARKER BARAJAS
21                         CSR No. 10915, RMR, CRR, CRC

22

23

24

25